Velma BEAUCHESNE

v.

Robert P. NIMMO, Administrator of Veterans' Affairs of the United States; Donald T. Regan, Secretary of the United States Department of Treasury; and Society for Savings, a Banking Corporation.

Civ. No. H–81–550.

United States District Court,
D. Connecticut.

April 11, 1983.

Bruce J. Batts, Hartford, Conn., Catherine M. Callery, Enfield, Conn., Judith I. Solomon, Legal Aid Soc. of Hartford County, Hartford, Conn., for plaintiff.

Frank H. Santoro, Asst. U.S. Atty., Alan H. Nevas, U.S. Atty., New Haven, Conn., for Federal defendants.

Susan Papanek McHugh, Robinson, Robinson & Cole, Hartford, Conn., for Soc. for Sav.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

CLARIE, Senior District Judge.

The plaintiff has brought this action to challenge the procedures used by the defendants to recoup overpayments of pension benefits issued by the Veterans' Administration. The plaintiff has moved for class certification pursuant to Fed.R.Civ.P. 23(b)(2) and for summary judgment pursuant to Fed.R.Civ.P. 56. The defendant bank, Society for Savings, has also moved for summary judgment and claims that its actions were taken in accordance with federal law. The federal defendants, Robert P. Nimmo and Donald T. Regan, have moved to dismiss the complaint or, in the alternative, for summary judgment. The Court finds that there are no material facts in dispute and the defendant bank is entitled to summary judgment as a matter of law. The federal defendants' motion to dismiss or for summary judgment is denied. The plaintiff's motions for summary judgment and for class certification are granted.

When the Veterans' Administration (hereinafter "VA") erroneously issues an overpayment of benefits, 38 U.S.C. § 3102(a) provides that "there shall be no recovery of ... overpayments ... whenever the Administrator determines that recovery would be against equity and good conscience ...." The plaintiff received an overpayment of VA benefits that was directly deposited into her bank account. Over ten months later, the VA learned of its error and asked the Department of the Treasury (hereinafter "Treasury") to recover the overpayment. The Treasury notified the plaintiff's bank and ordered the bank to return the funds. The bank debited the plaintiff's account in the amount of the overpayment without any prior notice to the plaintiff. The plaintiff claims she was entitled to request a waiver pursuant to 38 U.S.C. § 3102(a), but the defendants denied her any opportunity to be heard on the issue of waiver. The plaintiff claims that the actions of the defendants amounted to a confiscation of her property without due process of law.

### Facts

The plaintiff, Velma Beauchesne, is the widow of a deceased veteran of the United States Armed Forces, Joseph Beauchesne. During his lifetime, the plaintiff's late husband received VA pension benefits in the amount of $128.95 each month. The plaintiff and her late husband shared a joint checking account at the defendant bank, Society for Savings (hereinafter "Society"). On July 3, 1979, Mr. Beauchesne, Society and the VA executed an agreement entitled "Authorization For Deposit of Federal Recurring Payments", Treasury Form 1199A (hereinafter "Authorization Form"). This Authorization Form was executed to authorize the direct deposit, by means of Electronic Fund Transfer, of Mr. Beauchesne's monthly veterans pension payment of $128.95 directly into the joint checking account held by Mr. Beauchesne and his wife.

The Authorization Form contained several express agreements and conditions. At the top of the instruction side of the Form, in capital letters and underlined, the Authorization Form expressly stated: "THIS FORM AUTHORIZES DEPOSITS INTO YOUR ACCOUNT—IT DOES NOT AUTHORIZE WITHDRAWALS FROM YOUR ACCOUNT." The other side of the Authorization Form was divided in half and Mr. Beauchesne was instructed to fill out the upper half. Immediately below Mr. Beauchesne's signature, in the portion to be completed by the financial organization, the Authorization Form expressly stated that Society agreed "to receive and deposit sums

for the payee(s) named herein, in accordance with 31 C.F.R. Parts 240, 209 and 210." The latter are the regulations issued by the Treasury pertaining to direct deposits of federal recurring payments.

The plaintiff's husband died on December 14, 1979. Under 38 U.S.C. § 3012(b)(1), Mr. Beauchesne's entitlement to his monthly VA pension payment terminated on the last day of the month *preceding* his death, i.e., November 30, 1979. Nevertheless, on December 31, 1979, the VA erroneously certified a monthly pension payment for Mr. Beauchesne, which was directly deposited into Mr. and Mrs. Beauchesne's joint checking account.

The VA subsequently learned of its error and requested that Treasury recover the $128.95 from Society. The Treasury sent a notice (Form TFS RO–133) to Society dated October 23, 1980, which stated: "The Government has become aware of a situation of death or legal incapacity pertaining to the following Federal recurring payment(s) for which your organization is accountable under the conditions set forth in 31 C.F.R. Part 210 . . . ." On October 27, 1980, Society debited the plaintiff's account in the amount of $128.95 pursuant to this request from the Treasury for the return of the funds. Society then notified the plaintiff on October 31, 1980, that her account had been debited.

On November 17, 1980, the plaintiff, through her legal-aid attorney, corresponded with the VA to request a waiver of the debt pursuant to 38 U.S.C. § 3102 and an opportunity for a hearing. There is nothing in the record to indicate that any action was taken by the VA in response to this request.

The plaintiff filed this action on August 4, 1981, requesting injunctive relief for herself and others similarly situated against the Administrator of Veterans' Affairs and the Secretary of the United States Department of Treasury (hereinafter the "federal defendants"). In addition, the plaintiff requests injunctive relief against the defendant bank (Society) and the class of banks it represents. The plaintiff argues that the recoupment of the overpayment, without notice or an opportunity for a hearing, violated her right to request a waiver pursuant to 38 U.S.C. § 3102 and her right to due process as guaranteed by the Fifth Amendment to the United States Constitution.

The federal defendants have moved to dismiss the plaintiff's complaint on various grounds. Society has moved for summary judgment and claims that its actions were authorized and immunized by applicable federal law. The plaintiff has also moved for summary judgment claiming that there are no disputed issues of material fact and that she is entitled to a judgment as a matter of law.

### Motion to Dismiss

The federal defendants move to dismiss this action and claim that the plaintiff has failed to state a claim upon which relief can be granted. The federal defendants initially argue that this Court is without jurisdiction to hear the plaintiff's claims.

The plaintiff asserts that this Court has jurisdiction under 28 U.S.C. § 1331 and claims that this action arises under the Constitution and laws of the United States. In particular, the plaintiff alleges that the procedures followed by the defendants violated 38 U.S.C. § 3102 and her constitutional right to due process.

The federal defendants contend that this Court is precluded from exercising jurisdiction to hear the plaintiff's claims because of 38 U.S.C. § 211(a), which provides:

"(a) On and after October 17, 1940, except as provided in sections 775, 784 [38 USCS §§ 775, 784], and as to matters arising under chapter 37 of this title [37 USCS §§ 1801 et seq.], the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have the power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise."

In *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), the Supreme Court held that § 211(a) did not preclude judicial review of the constitutionality of VA benefits legislation. 415 U.S. at 366, 94 S.Ct. at 1165; *see also Hernandez v. Veterans Administration,* 415 U.S. 391, 393, 94 S.Ct. 1177, 1178, 39 L.Ed.2d 412 (1974). Federal courts have uniformly held that where the plaintiff alleges a constitutional challenge to the legislation or regulations governing the VA, § 211(a) does not prevent a federal court from exercising its jurisdiction. *See Devine v. Cleland,* 616 F.2d 1080 (9th Cir.1980); *Moore v. Johnson,* 582 F.2d 1228 (9th Cir.1978). In addition, suits to challenge the statutory authority of the VA to promulgate certain regulations are similarly not precluded by § 211(a). *See Wayne State University v. Cleland,* 590 F.2d 627 (6th Cir.1978); *University of Maryland v. Cleland,* 621 F.2d 98 (4th Cir. 1980).

Whether a suit arises under the Constitution and laws of the United States is determined from the allegations of the plaintiff's complaint. *North American Phillips Corp. v. Emery Air Freight Corp.,* 579 F.2d 229 (2d Cir.1978). Here, the plaintiff has alleged that the procedures followed by the defendants conflict with both statutory and constitutional provisions. The Court finds that it has jurisdiction under 28 U.S.C. § 1331 and is not precluded from exercising that jurisdiction by 38 U.S.C. § 211(a). Accordingly, the federal defendants' Motion to Dismiss for lack of jurisdiction is denied.

The federal defendants also represent that the plaintiff lacks standing to bring this action because the monthly pension payments from the VA were due and owing to the plaintiff's husband alone, and only while he was living. The federal defendants argue that after his death, neither he nor anyone else had any legal claim to the benefit in question. They argue that the plaintiff was not entitled to receive the monthly pension benefit either before the death of her husband or after his death, and thus she has no property interest in the funds in question.

For purposes of due process analysis, courts may look to state law to determine whether a claimed interest is sufficient to be cognizable as a "property" interest protected from deprivation without due process of law. *Leis v. Flynt,* 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979). It is undisputed that the funds in question were automatically deposited by Electronic Fund Transfer into a joint bank account held by the plaintiff and her husband. Conn.Gen.Stat. § 36–3 provides that a joint bank account

"in the names of two or more persons and in form to be paid to any one or the survivor, or survivors, of them, such deposit or account and any additions made by any of such persons after the making or issuance thereof, together with all dividends or interest or increases credited thereon, shall be held for the exclusive use of such persons and may be paid to any of them during the lifetime of all of them or to the survivor or survivors after the death of one or more of them . . . ."

Under Connecticut law, therefore, a surviving co-depositor obtains full title to the joint bank account upon the death of the other co-depositor. *Devitt v. Manulik,* 176 Conn. 657, 410 A.2d 465 (1979). This is not to say that the plaintiff's title to the funds in the account is absolute or that the VA is precluded by this statute from seeking recoupment of the overpayment. For purposes of this decision, the statute merely provides an independent state law source of the plaintiff's property interest sufficient to be protected by the Due Process Clause. Accordingly, the Court finds that the plaintiff has a property interest at stake sufficient to give her standing to prosecute this action.

Mrs. Beauchesne's claim might have been entirely precluded if her late husband and she had expressly or impliedly agreed that their joint bank account would be subject to summary withdrawals of overpayments. The express language of the Authorization Form, however, negates any implication of such an agreement. The Authorization Form instructed, in emphasized type, that

the executed agreement "DOES NOT AUTHORIZE WITHDRAWALS FROM YOUR ACCOUNT". In the face of this express language, the defendants cannot contend that the recipient authorized the summary withdrawal of overpayments from the joint account.

Accordingly, the federal defendants' Motion to Dismiss is, in all respects, denied.

*Cross Motions for Summary Judgment*

The plaintiff and the defendant bank (Society) have both moved for summary judgment. The actions taken by the defendants with respect to the plaintiff's bank account are undisputed. The Court finds that there are no issues of material fact and summary judgment is appropriate in this case.

In its motion for summary judgment, Society claims that the actions it took were mandated by federal regulations. Society further argues that its compliance with the applicable regulations immunizes it from liability. The federal defendants contend that Society has misconstrued the applicable Treasury regulations and that Society's actions were instead taken pursuant to state law or at its own financial peril.

Society and the plaintiff's late husband executed Treasury Form 1199A to authorize the direct deposit of the monthly VA pension benefits by means of Electronic Fund Transfer.[1] The Authorization Form required an express agreement by Society that it would "receive and deposit sums for the payee(s) named herein, in accordance with 31 C.F.R. Parts 240, 209 and 210." Society claims that it was bound to follow the instructions contained in 31 C.F.R. § 210 when it received the reclamation form (TFS RO–133) from the Treasury on October 27, 1980. Financial organizations are provided specific instructions in 31 C.F.R. § 210.10, entitled "Collection Procedures", which provides, in pertinent part:

"(a) For each type of recurring payment, the Department of the Treasury shall send a written notice ('first notice') to the financial organization which shall include the name of the recipient and any beneficiary, the depositor account number, type of account, type of recurring payment, the date of death or legal incapacity, .... On receipt of this notice, the financial organization shall immediately return to the Treasury Department the amount remaining in the account up to the total amount of credit payments listed in the notice."

Society argues that it cannot be held liable for following the collection procedures contained in § 210.10 because it is granted immunity under 31 C.F.R. § 210.7(h), which provides:

"(h) Each financial organization by its action of handling a credit payment shall be deemed to warrant to the Government that it has handled such credit payment in accordance with this part. In addition to the liability which may be imposed pursuant to § 210.9, if the foregoing warranty is breached, the financial organization shall indemnify the Government for any loss sustained by the Government, but only to the extent that such loss was the result of such breach. Except as provided in this section, and § 210.9, a financial organization shall not be liable under this part to any party for its handling of a credit payment."

31 C.F.R. § 210.9 instructs that when credit payments should have been returned to the Government due to the death of a recipient, the financial organization "shall be accountable to the Government for the total amount of any such credit payments", with certain limitations not applicable in this case. These limitations are described in § 210.9 by reference to the "amount available in the recipient's account." The federal defendants rely on the use of the term "recipient's account" in § 210.9(a) and

1. The payment by the method of Electronic Fund Transfer is significant to distinguish this case from other situations, where the payment is made by negotiable instrument directly deposited or other methods. Here, there is no requirement of endorsement or signature of the recipient for the deposit because the benefits are credited to the appropriate bank account simply by means of an electronic entry.

argue that Society was only authorized to debit the plaintiff's late husband's account, and was not authorized to debit the plaintiff's account.

The argument of the federal defendants ignores the fact that the plaintiff and her late husband shared a joint account. The regulations do not prohibit direct deposits into joint accounts and, in fact, the regulations indirectly contemplate such joint accounts. *See* 31 C.F.R. § 210.10(a)–(b).[2] The federal defendants' reliance on the more restrictive term "recipient's account", contained in § 210.9(a), is misplaced as that section refers only to limitations on the bank's liability and does not provide the specific instructions for recoupment procedures.

Section 210.10(a) is the regulation that provides specific instructions for collection procedures and it directs that the financial organization "shall immediately return to the Treasury Department the amount remaining in the account up to the total amount of credit payments listed in the notice." This instruction clearly refers to the bank account where the recurring payments are credited in accordance with § 210.7(e). Here, the recurring payments were credited to the joint bank account and Society's interpretation that the regulations authorized and directed that recoupment be made from the account was a reasonable and justified conclusion.

Direct support for this interpretation of the Treasury regulations is provided in "The Green Book", which is a publication of the Department of the Treasury distributed to financial organizations containing instructions for processing direct deposit federal recurring payments. The Green Book contains instructions on how to process the notice of accountability (Form TFS RO–133) received by Society. The Green Book states:

"If the total amount of the outstanding payment(s) remains in the account, *withdraw* the outstanding amount from the account. Refund the amount by a check drawn payable to the Bureau of Government Financial Operations." (Emphasis in original).

■■■ The Green Book is an official publication of the Department of the Treasury and, as such, it can be considered to be an authoritative interpretation of Treasury regulations. The interpretation of a regulation or statute by the regulatory agency charged with administering it is given controlling weight, unless it is inconsistent or clearly erroneous. *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1964). The Green Book provides additional support for the Court's conclusion that 38 C.F.R. § 210.10(a) directed Society to recover the amount of the overpayment from the plaintiff's bank account.

■■■ The Court finds that the Treasury regulations, properly construed, required that Society debit the plaintiff's account in the amount of $128.95 when it received the notice (Form TFS RO–133) from the Treasury that an overpayment had been made. Society cannot be held liable to any party for its actions by virtue of 31 C.F.R. § 210.7(h). Accordingly, Society's motion for summary judgment is granted.

*Plaintiff's Motion for Summary Judgment*

The plaintiff moves for summary judgment and argues that the defendants' procedures of debiting her account without prior notice or an opportunity for a hearing or waiver violated her constitutional right to due process and violated the statutory and

2. Subsection (a) of § 210.10 provides that where the amount remaining in the account is less than the overpayments sought to be recovered, the financial organization shall provide the names of all persons who withdrew funds from the account after the date of the overpayment. Subsection (b) directs the program agency to attempt to collect the unrecovered amount from the persons who withdrew money from the account after the overpayment. The collection procedures thus expressly contemplate joint bank accounts where persons other than recipients of VA benefits are authorized to withdraw from the bank account where benefits are deposited.

regulatory provisions governing the Veterans' Administration. The plaintiff relies principally on the unanimous decision of the Supreme Court in *Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2546, 61 L.Ed.2d 176 (1978). In *Califano,* the Court held that under § 204(b) of the Social Security Act, 42 U.S.C. § 404(b), where a request for a waiver has been made, an oral hearing is required before the government may recoup an overpayment. The Court noted that § 204(b) was mandatory in form in that it stated that "there shall be no" recovery where waiver is proper. 442 U.S. at 693–94 n. 9, 99 S.Ct. at 2553–54 n. 9. The Court also noted that similar mandatory language could be found in the statute authorizing waiver of Veterans' benefits, 38 U.S.C. § 3102(a). *Id.* The Court's decision in *Califano* rested entirely on statutory grounds and the Court did not decide whether the Due Process Clause of the Constitution would require the same result. 442 U.S. at 693, 99 S.Ct. at 2553.

The plaintiff here, unlike any of the plaintiffs in *Califano,* was not a beneficiary of the governmental benefits at issue, and only came into possession of them because she was a joint account holder with a beneficiary. The federal defendants argue that the plaintiff is not entitled to a waiver under 38 U.S.C. § 3102(a) because she was not a "payee" of the Veterans' benefits. Section 3102(a) provides:

"(a) There shall be no recovery of payment (or any interest thereon) or overpayments (or any interest thereon) of any benefits under any of the laws administered by the Veterans' Administration whenever the Administrator determines that recovery would be against equity and good conscience, if an application for relief is made within two years from the date of notification of the indebtedness by the Administrator to the payee."

The federal defendants rely on the reference to "payee" at the end of this section and claim that this term restricts the persons who may request a waiver to those who are the intended beneficiaries. The plaintiff argues that the term "payee" appears only in the context of a time limitation and should not be interpreted to restrict the persons who may request a waiver.

Before 1972, the word "payee" did not appear in § 3102 and the section read:

"(a) There shall be no recovery of payments or any benefits (except servicemen's indemnity) under any of the laws administered by the Veterans' Administration from any person who, in the judgment of the Administrator, is without fault on his part, and where, in the judgment of the Administrator, such recovery would defeat the purpose of benefits otherwise authorized or would be against equity and good conscience."

The clear language of § 3102(a), as it existed before the 1972 amendments, indicated that waiver was authorized for "*any person who, . . . is without fault . . .*" (emphasis added), regardless of whether that person was a "payee" of the overpayment.

The legislative history of the 1972 amendments to § 3102 indicates that the section was amended "to liberalize both the general authority to waive recovery of overpayments provided for in section 3102(a) of title 38, and the authority for waiver of indebtedness to the Veterans' Administration after a default and loss occurring with respect to any loan guaranteed, insured, or made under chapter 37 of that title." 1972 U.S.Code Cong. & Adm.News 2721. The House Report which accompanied the 1972 amendments stated that the effect of the amendments would be to eliminate the alternative standards for waiver and "[t]hus 'equity and good conscience' would remain as the only substantive standard for a waiver of recovery." H.R. 92–1125, 1972 U.S. Code Cong. & Adm.News 2712. There is nothing in the legislative history of the 1972 amendments to indicate that the term "payee" was added to § 3102(a) to restrict the persons who may request a waiver. Such an interpretation would run contrary to the expressed legislative intent to "liberalize" the waiver procedures.

■ The regulations of the Veterans Administration expressly provide that waiv-

er may be authorized for persons in the plaintiff's position. 38 C.F.R. § 1.963(c) provides:

"*Third persons.* Waiver of recovery may be authorized, if warranted, where Veterans Administration payments have come into the possession of a person other than the person entitled."

At one point, the federal defendants conceded that this regulation gave the plaintiff a technical right to petition for a waiver of recovery, *see* Memorandum in Support of Motion to Dismiss, November 13, 1981, at 9, although they later attempted to retract this admission. *See* Federal Defendants' Memorandum in Further Support of Their Motion to Dismiss, etc., August 6, 1982, at 18. The regulation does indicate that the VA has interpreted § 3102(a) to authorize waiver of recovery from non-payees. This Court finds that 38 C.F.R. § 1.963(c) authorizes the VA to waive recovery of overpayments of VA benefits that have come into the possession of a third person, who is not a beneficiary.

In *Califano v. Yamasaki, supra,* 442 U.S. at 693–94 n. 9, 99 S.Ct. at 2553–54 n. 9, the Court observed that the mandatory language of 42 U.S.C. § 404(b) imposed a duty to decide whether waiver is appropriate once it has been requested. Here, the plaintiff requested a waiver of the recovery and this Court finds that § 3102(a) imposed a similar duty upon the VA to decide whether waiver was appropriate. The VA retains discretion over whether to grant a waiver in a particular case, however, § 3102(a) mandates that such discretion be exercised once a waiver is requested.

The VA has responded to the *Califano v. Yamasaki* decision by adopting new regulations governing the collection of debts owed by reason of participation in a benefits program. *See* 48 Fed.Reg. 1052, January 10, 1983. The new regulations establish an elaborate procedure of notice and demand for payment of the debt including notification of the debtor's opportunity to request a waiver and an oral hearing. Consistent with *Califano v. Yamasaki,* "[i]f the debtor, within thirty days of the date of notification ... requests, in writing, waiver of collection in accordance with §§ 1.963 or 1.964 as applicable, offset shall not commence until the Veterans Administration has made an initial decision on waiver." 38 C.F.R. § 1.912a(c)(2). 48 Fed.Reg. 1055. The VA has thus recognized that a fair procedure, including the right to a pre-recoupment decision on a request for a waiver, is required to implement the statutory provisions of § 3102(a).

The new regulations, however, are limited in scope and apply only to those debts subject to collection by offset against the debtor's monthly compensation or pension benefits. 48 Fed.Reg. 1054. The plaintiff was subject to the recoupment of an overpayment by a direct debit against her bank account and she is not entitled to the procedural safeguards of the new regulations. As discussed previously, 38 C.F.R. § 1.963(c) authorizes the VA to grant a waiver to persons in the plaintiff's position and the same procedural safeguards ought to apply.

The collection procedures used for payments by direct deposit contained in 31 C.F.R. § 210.10 are promulgated by the Treasury and do not contain any of the procedural safeguards appropriate under the mandatory waiver provisions of § 3102(a). The VA could easily prohibit the direct deposit of VA benefits into joint accounts or require joint signatures, and the problems created by recoupment against joint account holders who are not beneficiaries would be completely avoided. The VA has, however, allowed direct deposits of VA benefits into joint accounts and it must provide joint account holders with the procedural safeguards required by § 3102(a). Notification of overpayments to such joint account holders will not create an excessive administrative burden because the financial organizations will be able to readily provide the names of all persons authorized to withdraw from the accounts where VA benefits are deposited.[3] Accordingly, the plaintiff's motion for summary judgment is granted.

**3.** The Treasury regulations currently require financial organizations to provide the names of

## Class Certification

The plaintiff has moved for class certification pursuant to Fed.R.Civ.P. 23(b)(2) and she seeks to represent all persons in Connecticut, who have had or will have VA benefits payable to the deceased beneficiaries directly deposited into their bank accounts and who subsequently have had or may in the future have their accounts debited by actions of the defendants to recover those benefits paid. Rule 23(b)(2) allows a class action to be maintained where "the party opposing the class has acted or refused to act on grounds applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." A class action under Rule 23(b)(2) is particularly appropriate in areas of government regulation and public law litigation. 3B Moore's Federal Practice § 23.40[1] (2d ed. 1982).

██ The plaintiff has not sought monetary recovery and requests only injunctive relief making this action properly certifiable as a class action under Rule 23(b)(2). *Elliot v. Weinberger,* 564 F.2d 1219, 1228 (9th Cir.1977), *aff'd in part and rev'd in part on other grounds sub nom., Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). In a class action under Rule 23(b)(2), the Court, in its discretion, may dispense with the normal requirement of prior notice to absent class members. *Id; Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1971). The plaintiff is represented by skilled and experienced counsel and prior notice to the class would serve no apparent

purpose. *See Lynch v. Household Finance Corporation,* 360 F.Supp. 720, 722 n. 3 (D.Conn.1973). Accordingly, the plaintiff's motion for class certification is granted, but the requirement of prior notice to the class of the pendency of this action is waived.

## Injunctive Relief

In accordance with this opinion, judgment shall be entered providing that defendant Robert P. Nimmo, Administrator of Veterans Affairs, his successor, his agents and employees, and all persons in active concert or participation with them, including the defendant Donald T. Regan, Secretary of the Treasury, his successor, his agents and employees, shall be restrained and enjoined from the collection of overpayments of VA benefits from a bank account of a member of the class certified, unless the procedures for prior demand and notification of rights and remedies as provided in 38 C.F.R. §§ 1.911a and 1.912a, have been complied with. Judgment shall also enter providing that the defendant Nimmo, his successor, his agents and employees, and all persons in active concert or participation with them, shall within ninety (90) days ascertain class members who, since December 1, 1979, have had their bank accounts debited to recoup overpayments of VA benefits, and shall forthwith provide a notification to such persons of their right to request a waiver and their right to an oral hearing on such request.[4] The VA shall conduct hearings when requested and shall determine whether waiver is appropriate in each individual case. The federal defendants shall file an appropriate return with this Court within one hundred twenty (120)

---

joint account holders in certain circumstances, *see* n. 2, supra, and the claim of unreasonable administrative burden is thus without merit.

**4.** This Court, unlike the district court in *Elliot v. Weinberger,* 371 F.Supp. 960 (D.Hawaii 1974), *aff'd in part and rev'd in part on other grounds sub nom., Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), does not deem it necessary or advisable to order that recoupments made in the past be restored to class members before individual

waiver decisions are made. In the future, notice and an opportunity for a hearing will be required before recoupment, however, the administrative burden and expense involved in restoring the overpayments previously recouped outweigh the benefit of such a procedure. Instead, the Court orders that individual waiver decisions be made on the overpayments already recovered, if waiver is requested after notification.

days from the date of this decision indicating compliance with this order.

SO ORDERED.