Alphena **BREAULT, Eleanor Wade, on their own behalf and on behalf of all others similarly situated**

v.

Margaret M. **HECKLER, in her capacity as Secretary of Health and Human Services, Donald T. Regan, in his capacity as Secretary of the Treasury \*.**

**Civ. No. N–79–304 (PCD).**

United States District Court,
D. Connecticut.

June 29, 1984.

---

\* This action as filed named as defendants Patricia Roberts Harris, in her then-capacity as Secretary of Health, Education and Welfare (predecessor to Health and Human Services), and G. William Miller, in his then-capacity as Secretary of the Treasury. Automatic substitution of the successors to these public officers is provided for by Rule 25(d)(1), Fed.R.Civ.P.

Judith I. Solomon, Legal Aid Soc., Hartford, Conn., Carolyn Kone, Bridgeport Legal Aid, Bridgeport, Conn., for plaintiffs.

Ellen J. Sazzman, Andrea Newmark, Dept. of Justice, Civ. Div., Washington, D.C., for defendants.

## RULING ON OBJECTION TO MAGISTRATE'S RECOMMENDED RULING

DORSEY, District Judge.

Plaintiffs are elderly widows who purport to represent a provisionally certified statewide class of similarly situated surviving spouses. Social Security payments, to and for the benefit of plaintiffs' husbands, were erroneously continued after the husbands' deaths and deposited directly or after indorsement into bank accounts on which plaintiffs and their husbands had been jointly named. The government recovered the erroneous payments, without notice, a hearing, or an opportunity to request a waiver of recoupment. Plaintiffs— social security beneficiaries in their own right—challenge such procedures. Plaintiffs do not claim entitlement to the erroneous payments, but claim that, in attempting to recover them, defendants, the Secretaries of Health and Human Services and the Treasury, violated Title II of the Social Security Act and denied them due process. The magistrate has recommended that defendants' alternative motion to dismiss or for summary judgment be denied and that plaintiffs' motin for summary judgment be granted. For the reasons below, the recommended ruling is not accepted and summary judgment shall enter for defendants.

*Facts*

A. *Plaintiff Breault*

Prior to the death of her husband on December 8, 1975, Alphena Breault and her husband each received a monthly Social Security check at their residence. About December 12, 1975, Mrs. Breault notified the Social Security Administration (SSA) of Mr. Breault's death and applied for funeral expenses and widow's benefits.

SSA erroneously certified to the Treasury Mr. Breault's benefit entitlement for the months of December 1975, and January, February and March, 1976.[1] Treasury issued and mailed four monthly checks to Paul Breault in the amount of $310.40 each. Under applicable regulations,[2] a government check issued to a deceased payee may not be negotiated after his/her death, but must be returned to the issuing agency for determination whether payment is due and to whom. Mrs. Breault contends that she was told by a local employee of SSA that the check could be negotiated if necessary to meet her living expenses,[3] and that her own benefits would be adjusted at a later date to reflect her receipt of her husband's benefits. Mrs. Breault indorsed the checks "for deposit only" and deposited them in the joint account at Connecticut National Bank (CNB). In May 1976, Mrs. Breault began receiving combined monthly widow's and retirement benefits. She also received a lump sum check for widow's benefits retroactive to Mr. Breault's death.

In August 1976, SSA informed Treasury of Paul Breault's death on December 8, 1975, and requested recovery of the four erroneous monthly payments. Treasury instituted an administrative recovery procedure from CNB, the presenting bank, in the amount of the four checks as negotiated without the indorsement of the payee, Mr. Breault. Such negotiation constituted

---

1. Mr. Breault's entitlement to Social Security benefits terminated with the installment for November 1975, the month preceding his death. 42 U.S.C. § 402(a).

2. 31 C.F.R. § 240.12(b).

3. Such advice, contrary to the noted regulation and commercial usage, may reflect a misinterpretation of the "superindorsement" provisions of 31 C.F.R. § 240.10(f), whereby a surviving family member may be authorized by the SSA to indorse and negotiate a benefit check issued *jointly* to two or more family members. Here, as the Breaults' checks were issued separately, and no stamped legend such as the regulations require could be nor was in fact affixed to the check before Mrs. Breault affixed her indorsement, the "superindorsement" provisions were inapplicable.

a breach of the bank's warranty as to the genuineness of prior indorsements.[4] In July 1978, CNB, pursuant to a right of setoff under Connecticut law,[5] debited Mrs. Breault's accounts $1,239.99, the appropriate total of the four erroneous payments and remitted to the Treasury $1,241.60.[6] Treasury in turn transferred $1,241.60 to SSA.

Mrs. Breault received no notice that defendants intended to reclaim the four payments nor that her accounts would be debited, at one fell swoop or otherwise.[7] She learned of the debiting when, her account having been reduced, CNB refused to honor a check she issued.[8] In August 1978, Mrs. Breault requested reconsideration of the "decision" that she had been "overpaid,"[9] and that SSA waive recovery of any overpayments. In March 1979, SSA informed Mrs. Breault that her requests would not be processed because checks negotiated after the death of the beneficiary were not considered "overpayments" under the Social Security Act and regulations.

### B. *Plaintiff Wade*

During 1976, the husband of Eleanor Wade was a recipient of disability benefits and she was a recipient of separate auxiliary benefits based on her husband's disability. Pursuant to an agreement between the Connecticut Bank & Trust Company (CBT) and the Wades, their two monthly benefit checks were deposited directly[10] into their joint checking account. The agreement provided that it would be canceled upon the death of either payee or beneficiary of the payments. On June 29, 1976, Robert Wade died. Shortly thereafter, Mrs. Wade notified SSA of the death and applied for widow's benefits. SSA continued to authorize

---

**4.** 31 C.F.R. § 240.4 provides, in pertinent part:
The presenting bank and the indorsers of a check presented to the Treasury for payment are deemed to guarantee to the Treasury that all prior indorsements are genuine . . . . When the first indorsement has been made by one other than the payee personally, the presenting bank and the indorsers are deemed to guarantee to the Treasury, in addition to other warrantees, that the person who so indorsed had unqualified authority to indorse the check in behalf of the payee.
By accepting checks bearing indorsements by another for a deceased payee, CNB was liable under applicable regulations to the Treasury to refund the checks presented. 31 C.F.R. § 240.5 as in effect in the period in question provided, in pertinent part:
(a) The Treasury has the right to demand refund from the presenting bank of the amount of a paid check if, after the check has been paid by the United States Treasury, it is found to bear a forged or unauthorized indorsement, or an indorsement by another for a deceased payee (or a deceased co-payee), where the right to the proceeds of such check terminated upon the death of the payee . . . .
As presently in effect, the regulation provides in pertinent part:
(a) If after a check has been paid by Treasury it is found to
(1) Bear on unauthorized indorsement the presenting bank or other indorser shall refund to the Treasury the amount of the check payment.

**5.** Connecticut law permits banks to enter into agreements with their depositors to supplement the provisions of Article Four of the Uniform Commercial Code, Conn.Gen.Stat. § 42a–4–103, which agreements may permit the bank to exercise rights of setoff against their depositors. Conn.Gen.Stat. § 42a–4–201.

**6.** The four payments $1,241.60, the amount sought by and remitted to the Treasury. Turner Affidavit ¶ 13. Mrs. Breault's checking and savings accounts were debited $620.80 and $619.19, respectively, a total of $1,239.99. (Complaint ¶ 33).

**7.** Neither SSA, Treasury nor CNB claim to have notified Mrs. Breault of a plan to reclaim with resulting off-sets. On January 8, 1981, the court invited plaintiffs to join the banks as parties-defendant. Plaintiffs declined the invitation.

**8.** Complaint ¶¶ 32–34.

**9.** Complaint ¶ 35.

**10.** Direct deposit of Social Security benefits is effectuated either by a check drawn in favor of and sent directly to the beneficiary's bank for credit to the beneficiary's account, *see* 31 C.F.R. Part 209, or by a paperless bookkeeping transaction (commonly referred to as credit payments or "electronic fund transfer" or EFT), whereby a beneficiary's account is credited after a simultaneous debiting and crediting of the bank's and Treasury's accounts with the Federal Reserve system. *See* 31 C.F.R. Part 210. The payments in question made to Mrs. Wade involved traditional checks—involved both methods of direct deposit. *See* Treasury Form 1199, appended to the complaint as Exhibit G.

Treasury to issue six monthly payments to Mr. Wade of $311.20 each. Three payments were deposited directly and three payments were electronically transferred into the CBT account.[11]

In August 1976, based on a bank statement, Mrs. Wade notified the local SSA office that her husband's benefits were still being deposited into the checking account. She states she was advised by an SSA employee that "the problem would adjust itself."[12] In December 1976, Mrs. Wade began to receive monthly widow's benefits and also received a lump-sum widow's benefits retroactive to her husband's death, and a lump-sum death benefit, all of which were deposited directly into her account.[13] In or before October 1976, Mr. Wade's name was removed from that account.

In December 1976 and again in January 1977, SSA requested recoupment by Treasury of the six payments made after Mr. Wade's death. Treasury reclaimed, of CBT, the total of the three direct deposits under 31 C.F.R. Part 209 and the three electronic fund transfers under 31 C.F.R. Part 210. In February and March 1977, CBT debited Mrs. Wade's account $1,556.00, which equals the total of five of the six erroneous credits to the Wade account. CBT refunded to Treasury all or substantially all of these amounts.[14]

Like Mrs. Breault, Mrs. Wade received no notice that defendants intended to reclaim the monies nor that her account would be debited, particularly at one fell swoop. Neither was she permitted to request waiver of recovery. She learned of the debiting when it was reflected in her account statements.[15] In April and again in June 1977, Mrs. Wade, who apparently did not question $933.60 of the debits, requested the local SSA office to clarify the withdrawals in excess of $933.60. Her request forms reflect SSA notations that she was in "dire need."[16] On June 17, 1978, Mrs. Wade was advised by SSA to contact her bank if she believed her account had been charged improperly inasmuch as the erroneous payments were not considered "overpayments" under the Social Security Act and regulations.

### C. This Action

Alphena Breault and Eleanor Wade brought this action on behalf of themselves and all others similarly situated,[17] contend-

---

11. The bank warrants to Treasury, with respect to both direct deposit checks and direct deposit credit payments or electronic fund transfers, that it will remit funds received after the death of the recipient. With regard to direct deposit checks. 31 C.F.R. § 209.9 provides, in pertinent part:

> A financial organization which receives checks under the procedure set out in [Part 209] does so in each case as the agent of the ... beneficiary who has designated the financial organization to receive the check and credit his account. Such a financial organization may revoke its agency by notice to the ... beneficiary. The death of that ... beneficiary revokes the authority of the financial organization to credit the amount to the account of that individual.

With regard to electronic fund transfers, 31 C.F.R. § 210.7(f)(3) provides, in pertinent part:

> A financial organization shall promptly return to the Government through the Federal Reserve Bank any relevant credit payment received by such financial organization ... [a]fter the death or legal incapacity of the recipient or death of the beneficiary.

See also 31 C.F.R. § 210.9(a), providing certain limitations—apparently inapplicable here—on a financial organization's liability to the government for credit payments received after the death or incapacity of a recipient or beneficiary.

12. Complaint ¶ 43.

13. Complaint ¶ 45.

14. It is unclear whether Treasury sought a refund of the sixth and final credit and whether CBT debited or sought to debit her account therefor. Compare Complaint ¶ 48 with Turner Affidavit ¶ 19 and plaintiff's Memorandum (document # 39) at 13–14.

15. Complaint ¶ 46; Plaintiffs' Memorandum (document # 39) at 13.

16. See Plaintiffs' Memorandum (document # 39), Exhibits C and D.

17. On March 15, 1980, the court, Daly, J., provisionally certified a statewide class consisting of:

> all present and future recipients of Title II Social Security benefits who have or will receive benefits payable to deceased beneficiaries and who have or will have their bank accounts debited as a result of defendants'

ing that the recovery procedures violated rights secured to plaintiffs under Section 204 of the Social Security Act, 42 U.S.C. § 404 (the Act), its implementing regulations in 20 C.F.R. Part 404 Subparts F and J, the Administrative Procedures Act (APA), 5 U.S.C. §§ 551, *et seq.*, the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the fifth amendment. Plaintiffs seek invalidation and enjoinder of defendants' practices and an order that plaintiffs be given notice and an opportunity to request waiver of recovery of the erroneous payments and a hearing. Jurisdiction is asserted under 42 U.S.C. § 405(g) (the Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1361 (mandamus).

The magistrate found mandamus jurisdiction under 28 U.S.C. § 1361 and recommended denial of defendants' motion to dismiss. On the merits, the magistrate concluded that mandamus was proper and would order a notice and a hearing. He thus recommended the granting of plaintiffs' motion for summary judgment and the denial of defendants' motion for summary judgment on the statutory claim. He found it unnecessary and improvident to consider the constitutional claim.

The court has reviewed *de novo*, 28 U.S.C. § 636(b), the magistrate's proposed decision and the voluminous record, memoranda, post-argument filings and various letter submissions on file on which the pending motions are based.

## Discussion

### I. *Jurisdiction*

Three statutes are relevant to the question of jurisdiction.

(1) 42 U.S.C. § 405(g), establishes jurisdiction to review claims arising under the Act after the secretary renders a "final decision;"

(2) 28 U.S.C. § 1331, establishes federal question jurisdiction; and

(3) 28 U.S.C. § 1361, establishes mandamus jurisdiction.[18]

### A. *Title 28 U.S.C. § 1331 (federal question)*

■ A "veritable jurisdictional nightmare" here "stem[s] primarily from the broad reading given the last sentence of [42 U.S.C. § 405(h)] in *Weinberger v. Salfi*, 422 U.S. 749 [95 S.Ct. 2457, 45 L.Ed.2d 522] (1975)." *Ellis v. Blum*, 643 F.2d 68, 70, 73 (2d Cir.1981). Section 405(h) reads, in pertinent part:

The findings and decision of the Board ... shall be binding upon all ... parties .... No findings of fact or decision of the Board shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action

---

actions to recover benefits payable to deceased beneficiaries.

Ultimate class certification and possible narrowing of the provisionally certified class has been the subject of much briefing in this action. The provisionally certified class appears overbroad, in failing to exclude the forged indorsement. It also may be underbroad in excluding persons not receiving Social Security benefits in their own right. The magistrate recommended deferral of the refining the class definition until the court reviewed his proposed decision. As the court does not accept the proposed decision, the class definition question need not be reached.

**18.** Section 405(g), 42 U.S.C., provides in part as follows:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.... The judgment of the court shall be final except that it shall be subject to review in the same manner as a.judgment in other civil actions.

Section 1331 reads:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

Section 1361 provides:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

against the United States, the Board or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this title.

In *Salfi*, the Court noted that a "claim arising under" the Act included all claims as to which the Act provided "both the standing and the substantive basis for the presentation," and held that a constitutional challenge to a statute specifying duration of relationship eligibility was a "claim arising under" Title II of the Act within the meaning of 42 U.S.C. § 405(h), even though it also arose under the constitution. *Salfi*, 422 U.S. at 756–67, 95 S.Ct. at 2462–67. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)—both decided after *Salfi*—channeled judicial review exclusively under § 405(g), thus requiring administrative exhaustion as a jurisdictional prerequisite. *Salfi* has recently been cited by our court of appeals for the proposition that "federal question jurisdiction has been specifically foreclosed for claims brought under Title II of the Act." *Smith v. Schweiker*, 709 F.2d 777 (2d Cir.1983) (affirming, for want of jurisdiction, dismissal of action challenging state's procedures for terminating disability benefits previously awarded under the Act).

Based on *Salfi* and its progeny, federal question jurisdiction has been rejected with respect to a challenge to a rule promulgated by the secretary under the Medicare Act, 42 U.S.C. §§ 1395c, *et seq.*, which provides for judicial review of final decisions in the same manner as is provided in § 405(g) for Title II claims. *Heckler v. Ringer*, —— U.S. ——, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). The Court had "no trouble concluding that all aspects" of the claimant's challenge to the secretary's policy "arise under" the Medicare Act, *Ringer* at —— - ——, 104 S.Ct. at 2021, as that Act provided both the substance and standing for the claims. The characterization of claims as procedural or substantive to determine federal question jurisdiction, and thus not requiring administrative exhaus-

tion, was held to be neither relevant nor proper. *Ringer* at —— - ——, 104 S.Ct. at 2020.

Thus jurisdiction for this action cannot be premised on 28 U.S.C. § 1331 as a federal question.

B. *28 U.S.C. § 1361 (mandamus jurisdiction)*

■ The Supreme Court has repeatedly declined to decide whether the third sentence of § 405(h) bars mandamus jurisdiction for claims under the Social Security Act. *See Califano v. Yamasaki*, 442 U.S. 682, 698, 99 S.Ct. 2545, 2556, 61 L.Ed.2d 176 (1979) (jurisdiction otherwise available under § 405(g)); *Eldridge*, 424 U.S. at 332, n. 12, 96 S.Ct. at 901, n. 12 (jurisdiction otherwise available under § 405(g)); *Norton v. Mathews*, 427 U.S. 524, 528–33, 96 S.Ct. 2771, 2773–76, 49 L.Ed.2d 672 (1976) (merits of the mandamus claim clearly insubstantial); *Ringer* —— U.S. at ——, 104 S.Ct. at 2021 (merits of mandamus claim clearly insubstantial). However, the rejection of the substantive/procedural characterization as determinative of federal question jurisdiction under § 405(h), *Ringer* at ——, 104 S.Ct. at 2020, substantially undercuts the precedential force of the "impressive array of cases in this and other circuits [establishing] that § 1361 [mandamus] jurisdiction will lie to review procedures employed in administering social security benefits." *Ellis*, 643 F.2d at 78.

Nonetheless, it seems premature to hold the reasoned teachings of *Ellis*, 643 F.2d 78–82; *Dietsch v. Schweiker*, 700 F.2d 865, 867–68 (2d Cir.1983), and *White v. Matthews*, 559 F.2d 852 (2d Cir.1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978), to have been overturned by *Ringer*. *See also, Ringer v. Schweiker*, 697 F.2d 1291, 1293–94 (9th Cir. 1982) (" 'when suit is brought simply to vindicate an interest in procedural regularity, there is no statutory bar' " (citation omitted)), *rev'd on other grounds sub nom. Heckler v. Ringer*, —— U.S. ——, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *Belles v.*

*Schweiker,* 720 F.2d 509, 512 (8th Cir.1983) ("in cases like the present one, which involve claims essentially procedural in nature, § 405(h) presents no obstacle to mandamus jurisdiction"); *Powderly v. Schweiker,* 704 F.2d 1092, 1095 (9th Cir. 1983) ("we reluctantly hold that mandamus jurisdiction is proper"); and *Dockstader v. Miller,* 719 F.2d 327 (10th Cir.1983) ("we are persuaded by the distinction the [Ninth Circuit] in *Ringer* and other courts have drawn"). Though there is room for doubt, the magistrate's recommended ruling, to the extent it finds mandamus jurisdiction is not precluded by the third sentence of § 405(h), is accepted and adopted.

█ It remains to be decided, then, whether, as the magistrate found, mandamus should properly issue in this case. A writ of mandamus requires exhaustion of all other avenues of relief. Only then, and if the defendant owes a clear nondiscretionary duty to perform the act in question will mandamus lie. *See Lovallo v. Froehlke,* 468 F.2d 340, 343 (2d Cir.1972), *cert. denied,* 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973); *Kerr v. United States Dist. Court,* 426 U.S. 394, 402–03, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725 (1976); *United States ex rel. Girard Trust Co. v. Helvering,* 301 U.S. 540, 543–44, 57 S.Ct. 855, 857, 81 L.Ed. 1272 (1937). It is assumed, without deciding, that the plaintiffs have exhausted all other avenues of relief to satisfy the first prong of the test, *see Ellis,* 643 F.2d at 78–79 (the secretary could not reasonably be expected, in an administrative proceeding, to remedy claimed errors in an established policy). Nonetheless, the claims asserted here fail on the second prong. The duty claimed simply is not nondiscretionary nor is it clearly owed. Mandamus may not issue.

## II. *Statutory Claim*

█ The plaintiffs claim, under 42 U.S.C. § 404 and its implementing regulations, they were entitled to notice and an opportunity to request waiver of recovery of the erroneous payments. They claim that the erroneous payments were "overpayments"

within the meaning of Sections 404(a) and (b) and thus trigger the procedural mechanisms of the Act and regulations. The court concludes, contrary to the magistrate, they were not. Section 404 reads, in part:

(a) Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Secretary, as follows:

(1) With respect to payment to a person of more than the correct amount, the Secretary shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall apply any combination of the foregoing.

(b) In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

The regulations provide that a person from whom recovery of an overpayment will be sought is entitled to notice of an opportunity to request waiver of recovery in accordance with Section 404(b). *See* 20 C.F.R. §§ 404.502(a) and 404.506. Where applicable, the regulations have been held to require a prerecoupment hearing on a request for waiver of an overpayment. *Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).

The regulations define "overpayment": As used in this subpart, the term 'overpayment' includes a payment in excess of

the amount due under Title II of the Act, ... a payment resulting from the failure to terminate benefits, and a payment where no amount is payable under Title II of the Act.

20 C.F.R. § 404.501(a).

The Social Security Claims Manual, apparently published for internal use, provides that payments such as those involved here are *not* "overpayments." Section 5500(a) provides:

'Overpayment' means excess payment. A Title II ... overpayment has been made when nothing was due or when an amount of the benefit(s) paid was greater than the amount of the benefit(s) for which the person was eligible .... However payment has not been made ... if the payment was not received by the designated payee.

Section 5500.1(a), provides:

When a benefit check which was certified correctly is improperly negotiated by someone other than the designated payee without the consent of the payee, or after his death a forgery occurred; the amount of the check may not be considered an overpayment .... The recovery of such amounts is the responsibility of the Treasury Department. Accordingly, there is no legal authority to recover the proceeds under Section 204(a) or to waive recovery or adjustment under Section 204(b).

Section 5500.3 provides:

Electronic fund transfer (EFT) payments for the month of a beneficiary's death and any subsequent months are incorrect

payments subject to reclamation by the Treasury Department and not overpayments subject to SSA recovery efforts under section 204 [42 U.S.C. § 404].

Plaintiffs challenge these Claims Manual provisions and the secretary's policy they reflect as inconsistent with the purposes and language of the Act and regulations. Plaintiffs' contention that the Claims Manual should have been published in the Federal Register pursuant to the APA [19] and the FOIA [20] in order to have effect is convincingly dispelled by *Powderly*, 704 F.2d at 1097–98. The provisions are neither "substantive" rules, requiring publication under APA, 5 U.S.C. § 533(b), (c), nor interpretations "of general applicability," so as to require publication under FOIA, 5 U.S.C. § 552(a)(1)(D).

The overpayment provisions of the claims manual do not change any existing policy, law, or regulation. They merely clarify general terms of the Act and regulations. Moreover, these interpretations have no impact on the substantive rights of any segment of the public. The sole effect of the interpretations is to define those who do not qualify for overpayment treatment as including individuals who wrongfully obtain funds erroneously paid to deceased beneficiaries. Exclusion, where no right previously existed, does not constitute a change in substantive rights. Therefore, we conclude that publication in the Federal Register was not necessary.

*Powderly*, 704 F.2d at 1098.

While the magistrate properly noted that such provisions are of no legal force,

....

**19.** 5 U.S.C. § 553 provides, in pertinent part:
(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law
....
Except when notice or hearing is required by statute, this subsection does not apply—
(A) to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice:
&ast; &ast; &ast; &ast; &ast; &ast;
(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making

**20.** 5 U.S.C. § 552(a)(1)(D) provides, in pertinent part:
(a) Each agency shall make available to the public information as follows:
(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—
&ast; &ast; &ast; &ast; &ast; &ast;
(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency.

*Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981), they may nonetheless be accorded deference. *See Morton v. Ruiz,* 415 U.S. 199, 233–37, 94 S.Ct. 1055, 1073–75, 39 L.Ed.2d 270 (1974).

*Powderly* affirmed the granting of summary judgment where a widow claimed, as does Mrs. Breault, SSA had authorized her to negotiate a check received after her husband's death.

> *The overall purpose of the social security program is to provide for the need of the beneficiaries. 'Once the need of the beneficiary is extinguished, as by death . . ., there is no longer a reason to pay the beneficiary.' . . . Moreover, there is no reason deriving from need or otherwise to allow someone other than the designated payee, including a surviving spouse, to retain the funds.*

*Powderly,* 704 F.2d at 1096 (footnote and citation omitted; emphasis added).

It is consistent with the Act not to accord these erroneous payments "overpayment" treatment within 42 U.S.C. § 404. Notwithstanding the unfortunate position of Mrs. Breault, having deposited checks erroneously certified to her deceased husband and on which he was the designated payee, the Second Circuit's recent observation in an action concerning the analogous framework for recovery of Supplemental Security Income Benefits bears repeating: "As to any payment that was not an 'overpayment,' of course, questions of fault, inequity, and the purposes of the Act do not come into play." *Valente v. Secretary of Health & Human Serv.,* 733 F.2d 1037 (2d Cir. 1984). Mrs. Breault's needs would be met and thus the purpose of the Act would be fulfilled by the payments accruing to her in her own right, upon the death of her husband. As essentially duplicative of the widow's own right to benefits, the erroneous payments cannot be judged in terms of fulfillment of the Act.

The claim of Mrs. Wade, to whose account the erroneous payments were directly deposited, is akin to that rejected in *Dockstader,* 719 F.2d at 327:

We believe that the reasoning in *Powderly* applies with equal force to this case. Here, Mahala did not actually negotiate any checks, and apparently was unaware that the funds were being placed in her account. Nevertheless, she did not receive more benefits than those to which she was entitled; she received benefits to which she had no claim of entitlement. *Since she was not the intended beneficiary of the payments, the purposes of the social security program would not be defeated by recovery of the payments, nor would such recovery be against equity and good conscience.* The procedural protections of section 404(b) are unnecessary and do not apply to this type of erroneous payment. Here, SSA erroneously certified benefits to Lawrence after his death, and the benefits were then wrongfully deposited directly into the bank account of his surviving spouse, Mahala. We hold that it is consistent with the purpose of the Social Security Act for the SSA to determine that such erroneous payments are not 'overpayments' within the meaning of 42 U.S.C. § 404. [Emphasis added]

As it is deemed consistent with the Act for SSA not to accord "overpayment" treatment to either plaintiff. Sections 404(a) and (b) and their regulations are properly applicable only to named payees of Social Security benefits. The magistrate's recommendations as to the statutory claim are not accepted. Plaintiff's motion for summary judgment is denied.

### III. *Due Process Claim*

Plaintiffs contend that defendants' method of recovering the funds was governmental action which deprived them of property in violation of their fifth amendment right to procedural due process. The court disagrees. Any action of the banks in debiting plaintiffs' account cannot be said to be "state action." *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Thus, any wrongs alleged do not rise to the level of due process

violations.[21]

Mrs. Breault's claim is sufficiently rebuffed by the *Powderly* concurrence, which noted:

> The federal government itself neither debited nor directed the bank to debit her account. The Treasury determined only that, pursuant to 31 C.F.R. § 240.5(a) (1982), [the bank] was liable to the Treasury for return of the amount paid by the Treasury to the bank on a check bearing an unauthorized endorsement. The Treasury made no determination as to who ultimately received the funds from the Treasury nor did it direct the bank to recover any funds from appellant. The only arguably federal government action was directed against [the bank] not appellant.
>
> Nor can the actions of [the bank] in debiting Powderly's account be imputed to the federal government on some theory of agency. [The bank's] ability to debit appellant's account in the amount of the forged check derives not from some delegation of federal authority to the bank by the Treasury but from appellant's own depositor contract with the bank and the self-help remedies authorized by ... state law governing the relationship between financial organizations and their customers.

*Powderly*, 704 F.2d at 1099 (Fletcher, J., concurring).

As state action was not involved, the debiting of Mrs. Breault's accounts did not require governmental due process.

Similarly, Mrs. Wade's claim is convincingly controlled by *Dockstader*. A bank is accountable to the government for credit payments which should have been returned to the government. By regulation and instructions, banks are to return to the Treasury "the amount remaining in the account up to the total amount of credit payments listed in the notice" issued.[22] These regu-

**21.** *Powderly* viewed the property interest claimed by the widows there as essentially directed toward the funds erroneously sent to the deceased husbands, rather than as directed toward her bank account. The court concluded that no due process violation had been shown by virtue of the failure to establish a legitimate claim of entitlement upon which to premise a protected property interest under *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). *Thomas v. Secretary of Health & Human Serv.*, No. C81–2485 SW (N.D. Cal., Sept. 12, 1983), a case involving direct deposits, distinguished *Powderly*, in part on grounds that—as here—no entitlement to the funds erroneously certified to the deceased husbands was claimed, and in part on grounds that *Powderly* did not involve EFT payments and found a protected property interest in plaintiffs' bank accounts sufficient to warrant due process protection against the government's lump-sum recovery of the monies in question. Nonetheless, the court held that a bank's debiting of customers' accounts to recover erroneously deposited direct deposit payments did not constitute state action sufficient to invoke constitutional protection except where the bank was directed by the Treasury to debit the *original,* albeit closed, joint account in which the payments were deposited. Mrs. Breault's matter did not involve direct deposits, and Mrs. Wade's own account was debited, not the joint account from which she had removed her husband's name some six months before. Plaintiffs' reliance on *Beauchesne v. Nimmo*, 562 F.Supp.

250 (D.Conn.1983) (Clarie, J.) (granting on statutory grounds summary judgment in favor of a class of widows complaining of the recovery of erroneously certified direct deposit Veterans Administration Pension Benefits) is misplaced by reason of the fact that the regulatory schemes therein considered expressly provided that waiver of recovery may be authorized for persons other than the designated payee. *See* 38 C.F.R. § 1.963(c). *Beauchesne* did not reach the merits of the due process issue for purposes of the summary judgment ruling, but only for the related but distinct and preliminary purpose of rebuffing the government's motion to dismiss on grounds of plaintiffs' asserted lack of standing to press a due process claim. *See Belles,* 720 F.2d at 513–14. *Beauchesne* found a property interest in joint account funds by reason of Connecticut law which vests either owner of a joint account with the right to draw against all of the funds in the account. The interest of the original owner of the funds, SSA, cannot be determined nor altered by the acts of a third-party bank or depositor, who converts the funds. The conversion cannot create in the converter an ownership interest thereby extinguishing the rightful owner's interest. *Falker v. Samperi,* 190 Conn. 412, 461 A.2d 681 (1983).

**22.** 31 C.F.R. 210.10(a). If a bank fails to comply with such a request, Treasury will instruct the appropriate Federal Reserve Bank to debit the bank's account. 31 C.F.R. § 210.10(e); Treasury Form RO–133 and Treasury's "Green Book" provide similar instructions.

lations and instructions apply only to the accounts of "recipients," defined by regulation as "person(s) entitled to receive recurring payments from the Government."[23]

The regulation directs the bank to withdraw the funds only from the account listed in the notice. That account is one belonging to the recipient or in which the recipient has an interest. No regulation or instruction directs banks to withdraw funds from the account of anyone other than the intended recipient. Here, the account belonged to Mahala and her son, neither of whom were entitled to the recurring payments and therefore were not the 'recipients' of the payments. Accordingly, Mahala cannot claim that Treasury authorized or directed the bank to withdraw the funds. Treasury determined that [the bank] was accountable to it for the funds, but that was the extent of federal involvement. The bank, without authorization from Treasury, debited Mahala's account. [The bank's] action may not 'fairly be attributed' to Treasury. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 157 [98 S.Ct. 1729, 1734, 56 L.Ed.2d 185] ... (1978). In the absence of any federal involvement, there was no violation of Mahala's Fifth Amendment right to due process. *Id. See also Powderly, supra,* 704 F.2d at 1099 (Fletcher, J., concurring).

*Dockstader* at 332.

Thus, as no state action was implicated in the recovery of the erroneously certified funds involved herein, no due process violation is stated.

*Conclusion*

To the extent the magistrate's recommended ruling found that mandamus should issue on plaintiffs' statutory claim under the facts of this case, it is reversed. Plaintiffs' due process claim is unavailing. Summary judgment shall, therefore, enter for defendants.

SO ORDERED.

**23.** 31 C.F.R. § 210.10(a).