719 F.2d 327
 3 Soc.Sec.Rep.Ser. 132
 Mahala DOCKSTADER, on behalf of herself and all others
similarly situated, Plaintiff-Appellant,
v.
G. William MILLER, Secretary of the United States Department
of the Treasury; the United States Department of the
Treasury; Richard S. Schweiker, Secretary of the United
States Department of Health and Human Services; and the
United States Department of Health and Human Services,
Defendants-Appellees.
 No. 82-1199.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 7, 1983.
Rehearing Denied Nov. 14, 1983.
 
 Lucy Billings, Community Action for Legal Services, Inc., New York City (Eileen P. Sweeney, Nat. Senior Citizens Law Center, Washington, D.C., and Alfred J. Chiplin, Jr., Nat. Senior Citizens Law Center, Los Angeles, Cal., with her on brief), for plaintiff-appellant.
 Gabriel Depass, Dept. of Health and Human Services, Baltimore, Md. (Kenneth Schmalzback, Dept. of Treasury, J. Paul McGrath, Asst. Atty. Gen., Robert S. Greenspan, Dept. of Justice, Washington, D.C., Brent D. Ward, U.S. Atty., Laurence J. Leigh, Asst. U.S. Atty., Salt Lake City, Utah, Randolph W. Gaines, Deputy Asst. Gen. Counsel, for Litigation, and A. George Lowe, Dept. of Health and Human Services, Baltimore, Md., with him on brief), for defendants-appellees.
 Before BARRETT, McKAY and LOGAN, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 Mahala Dockstader, on behalf of herself and all those similarly situated, brought this class action challenging the procedures by which the Social Security Administration (SSA) and the Department of the Treasury (Treasury) reclaimed certain erroneously paid social security benefits. The district court granted summary judgment in favor of SSA and Treasury and Mrs. Dockstader brought this appeal.
 
 
 2
 In 1968, Mahala Dockstader filed for and was found to be entitled to social security old-age insurance benefits. In 1972, her husband, Lawrence Dockstader, filed for and began receiving social security old-age insurance benefits. Both Mahala and Lawrence continued to receive their separate benefits through June of 1976. In April of 1976, Lawrence and Mahala entered into an agreement with the Walker Bank and Trust Company of Salt Lake City, Utah. The agreement provided that the net amount of their individual monthly social security benefits would be deposited directly into their joint account with the Walker Bank.[1] The reverse side of the agreement, Treasury Authorization Form 1199, provided that the agreement would be canceled upon the death of any payee or beneficiary of the payments. The agreement was in effect and the Dockstaders were receiving their payments by direct deposit into their joint account in June of 1976.
 
 
 3
 On June 25, 1976, Lawrence Dockstader died. On June 30, Mahala notified the SSA of Lawrence's death and filed an application for widow's benefits. In August of 1976, Mahala transferred ownership of her bank account to herself and her son. On October 14, 1976, SSA notified Mahala that she was entitled to combined widow's and retirement insurance benefits. On February 8, 1977, SSA first made an entry of termination of Lawrence's retirement benefits by reason of his death. It is unknown why no entry was made until this time, but because of the delay, SSA continued to certify payments to Lawrence through February of 1977. The Walker Bank continued to credit the erroneously certified payments to Mahala's account, even after she transferred ownership of the account.
 
 
 4
 On May 26, 1977, SSA forwarded a standard form to Treasury, requesting it to reclaim the erroneously certified benefits. Pursuant to 31 C.F.R. parts 209, 210, and 240, Treasury contacted Walker Bank and requested a refund of $1675.10 in erroneous payments. Walker Bank returned to Treasury $1,435.80, and at the same time debited the account belonging to Mahala and her son. SSA and Treasury did not give Mahala any notice prior to the time her account was debited, nor was she given the opportunity to request waiver of recovery of the erroneous payments.
 
 
 5
 Mahala Dockstader commenced this suit on behalf of herself and all other similarly situated persons.[2] She never contended that she was entitled to the erroneous payments in the first instance; rather, she argued that the recovery procedures utilized here violated section 204 of the Social Security Act, 42 U.S.C. Sec. 404, and its implementing regulations in 20 C.F.R. part 404, Section 207 of the Social Security Act, 42 U.S.C. Sec. 407, and the Fifth Amendment to the United States Constitution. Mahala asserted that federal jurisdiction existed under 42 U.S.C. Sec. 405(g), 28 U.S.C. Sec. 1331(a), and 28 U.S.C. Sec. 1361. The district court concluded that jurisdiction existed only under 28 U.S.C. Sec. 1361, the mandamus statute. Both parties moved for summary judgment. The court concluded that a mandamus order was improper since SSA and Treasury did not owe Mahala a duty under 42 U.S.C. Sec. 404(a). Accordingly, the court granted their motion for summary judgment. Mahala then filed a motion to alter judgment, claiming that the court had failed to consider her claims under the Fifth Amendment and 42 U.S.C. Sec. 407. The trial court filed a memorandum decision and order in which it addressed Mahala's contentions. Her motion to alter judgment was denied.
 
 
 6
 On appeal, Mahala contends that: (1) she was entitled to the procedural protections provided by 42 U.S.C. Sec. 404 and its implementing regulations; (2) the regulations and policies of SSA involved it directly in the debiting so that the procedural due process clause of the Fifth Amendment was implicated; and (3) SSA's involvement was sufficient that it violated the nonalienation of social security benefits provision of 42 U.S.C. Sec. 407. The first issue we must consider, however, is whether the district court had jurisdiction to hear this case.
 
 I.
 
 7
 In 42 U.S.C. Sec. 405(h), the Social Security Act provides that 42 U.S.C. Sec. 405(g) establishes the exclusive jurisdictional basis for a suit seeking "to recover on any claim arising under" the Act. The district court, however, based its jurisdiction on the mandamus statute, 28 U.S.C. Sec. 1361. The Supreme Court has yet to determine whether mandamus jurisdiction is appropriate to review SSA procedures. See Califano v. Yamasaki, 442 U.S. 682, 698, 99 S.Ct. 2545, 2556, 61 L.Ed.2d 176 (1979); Norton v. Mathews, 427 U.S. 524, 529-30, 96 S.Ct. 2771, 2774-75, 49 L.Ed.2d 672 (1976); Hadley Memorial Hospital, Inc. v. Schweiker, 689 F.2d 905, 912 (10th Cir.1982). Recently, however, the Supreme Court granted certiorari in a case which presents that issue. Heckler v. Ringer, --- U.S. ----, 103 S.Ct. 3535, 77 L.Ed.2d 1386 (1983). In Ringer, the Ninth Circuit ruled that when the plaintiff is simply asking a court to require SSA to provide procedural safeguards, without addressing any substantive right to benefits, mandamus jurisdiction is proper:
 
 
 8
 the language [in 42 U.S.C. Sec. 405(h) ] prohibiting reliance on the federal question or mandamus provisions for any action "to recover on a claim arising under" the Act only applied to actual claims for benefits. We noted that "when suit is brought simply to vindicate an interest in procedural regularity, there is no statutory bar."
 
 
 9
 Ringer v. Schweiker, 697 F.2d 1291, 1293-94 (9th Cir.1982) (quoting Daniel H. Freeman Memorial Hospital v. Schweiker, 656 F.2d 473, 476 (9th Cir.1981)). Accord Powderly v. Schweiker, 704 F.2d 1092, 1095 (9th Cir.1983); Humana of South Carolina, Inc. v. Califano, 590 F.2d 1070, 1080 (D.C.Cir.1978); White v. Mathews, 559 F.2d 852, 856 (2d Cir.1977), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978).
 
 
 10
 We are persuaded by the distinction the Ringer court and other courts have drawn between suits seeking to establish a right to benefits and suits requesting that SSA provide a procedure through which the right to benefits can be contested. Here, Mahala Dockstader has never claimed that she was entitled to the benefits erroneously credited to her bank account; she contends only that she had statutory and constitutional rights to notice and a hearing before the benefits were removed from her account. Accordingly, under the rationale of Ringer, we hold that the district court had mandamus jurisdiction to hear this case.
 
 II.
 
 11
 Mahala argues that under 42 U.S.C. Sec. 404 and its implementing regulations she was entitled to notice and an opportunity to request waiver of recovery of the erroneous payments. The district court rejected that argument on the grounds that sections 404(a) and (b) and their regulations apply only to the named payees of social security benefits. The court concluded that one who converts to his or her own use benefits intended for another person is not entitled to the procedural protections of the statute and regulations, irrespective of the person's good faith. We must determine, therefore, whether the erroneous payments here were "overpayments" within the meaning of sections 404(a) and (b).
 
 
 12
 The pertinent provisions of the statute state:
 
 
 13
 (a) Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Secretary, as follows:
 
 
 14
 (1) With respect to payment to a person of more than the correct amount, the Secretary shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall apply any combination of the foregoing.
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 (b) In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.
 
 
 18
 42 U.S.C. Secs. 404(a)(1) and (b). In defining the methods for recovering overpayments, the regulations provide that the person against whom recovery of the overpayment will occur is entitled to notice of his or her opportunity to request waiver of recovery in accordance with section 404(b). See 20 C.F.R. Secs. 404.502(a) and 404.506.
 
 The regulations also define "overpayment":
 
 19
 As used in this subpart, the term "overpayment" includes a payment in excess of the amount due under Title II of the Act, a payment resulting from the failure to impose deductions or to suspend or reduce benefits ..., a payment resulting from the failure to terminate benefits, and a payment where no amount is payable under Title II of the Act.
 
 
 20
 20 C.F.R. Sec. 404.501(a). Section 5500.3 of the Social Security Claims Manual provides that "[e]lectronic fund transfer (EFT) payments for the month of a beneficiary's death and any subsequent months are incorrect payments subject to reclamation by the Treasury Department and not overpayments subject to SSA recovery efforts under section 204 [42 U.S.C. Sec. 404]."
 
 
 21
 SSA contends, and the district court agreed, that the procedural protections of 42 U.S.C. Sec. 404 apply only to "overpayments" made to the designated payee. Here, Mahala Dockstader received payments for which Lawrence Dockstader was the designated payee. While we recognize that Mahala was not at fault in receiving the erroneous payments, we conclude that the payments here were not "overpayments" within the meaning of section 404(a). Our conclusion is influenced by the decision in Powderly v. Schweiker, 704 F.2d 1092 (9th Cir.1983).
 
 
 22
 In Powderly, the plaintiff received her deceased husband's social security benefit check after his death. She claimed that the local office of the SSA informed her that she could negotiate the check, and she did so. Plaintiff's bank accepted the check and forwarded it to the Treasury. When SSA informed the Treasury of the unauthorized endorsement, the Treasury initiated a recovery action against the bank. After it refunded the proceeds to the Treasury, the bank exercised its state statutory right of set-off against the plaintiff's bank account. At the same time, the plaintiff was attempting to obtain a hearing to determine if recovery could be waived. SSA, however, informed her that the payment was not an "overpayment", so she was not entitled to a hearing on waiver.
 
 
 23
 The Ninth Circuit upheld SSA's interpretation of 42 U.S.C. Secs. 404(a) and (b). In holding that the erroneous payment there was not an "overpayment" within the statute, the court held that "the overpayment waiver provisions of Sec. 404(b), supra, are intended to benefit only designated payees who, through no fault of their own, have received more benefits than those to which they are entitled." Powderly, supra, 704 F.2d at 1096. That interpretation, the court concluded, comported with the purposes of the Social Security Act:
 
 
 24
 The overall purpose of the social security program is to provide for the need of the beneficiaries. See Evelyn v. Schweiker, 685 F.2d 351, 353 (CA 9 1982). "Once the need of the beneficiary is extinguished, as by death ..., there is no longer a reason to pay the beneficiary." Id. at 353. Moreover, there is no reason deriving from need or otherwise to allow someone other than the designated payee, including a surviving spouse, to retain the funds.
 
 
 25
 Powderly, supra, 704 F.2d at 1096 (footnote omitted). The court, of course, was influenced in part by the wrongful negotiation of the check, but we emphasize that plaintiff claimed she negotiated it on the advice of the local SSA office.
 
 
 26
 We believe that the reasoning in Powderly applies with equal force to this case. Here, Mahala did not actually negotiate any checks, and apparently was unaware that the funds were being placed in her account. Nevertheless, she did not receive more benefits than those to which she was entitled; she received benefits to which she had no claim of entitlement. Since she was not the intended beneficiary of the payments, the purposes of the social security program would not be defeated by recovery of the payments, nor would such recovery be against equity and good conscience. The procedural protections of section 404(b) are unnecessary and do not apply to this type of erroneous payment. Here, SSA erroneously certified benefits to Lawrence after his death, and the benefits were then wrongfully deposited directly into the bank account of his surviving spouse, Mahala. We hold that it is consistent with the purpose of the Social Security Act for the SSA to determine that such erroneous payments are not "overpayments" within the meaning of 42 U.S.C. Sec. 404.
 
 III.
 
 27
 Mahala next contends that SSA's method of reclamation was governmental action which deprived her of a property interest in violation of her Fifth Amendment right to procedural due process. The trial court recognized that the instructions contained in 31 C.F.R. Sec. 210.10(a), Form RO-133, and section 4 of the Treasury Department's Green Book apparently do direct financial institutions to debit the accounts of deceased recipients in the amount erroneously paid. The court concluded, nevertheless, that the Treasury did not instruct banks to debit any account other than that of the designated recipient. Since Mahala was not a designated recipient, the bank's action in debiting her account to return the erroneous payments can not be attributed to Treasury.
 
 
 28
 It is true that Treasury does instruct banks to debit the accounts of recipients who have received credit payments that should have been returned to the government. Under 31 C.F.R. Sec. 210.7(f)(3), a financial organization is required to return a credit payment received after the death of the recipient. When a bank fails to return such credit payments, it is accountable to the government for the amount of the payments. 31 C.F.R. Sec. 210.9(a). In 31 C.F.R. Sec. 210.10(a), Treasury instructs banks to collect the amount owed to the government by returning to Treasury "the amount remaining in the account up to the total amount of credit payments listed in the notice." Moreover, if a bank fails to comply, Treasury will instruct the appropriate Federal Reserve Bank to debit the bank's account with the Federal Reserve Bank. 31 C.F.R. Sec. 210.10(e). Form RO-133 and section 4 of Treasury's Green Book similarly instruct the bank to withdraw the amount from the recipient's account.
 
 
 29
 We conclude, however, that the trial court correctly interpreted the regulations and instructions as applying only to the accounts of "recipients". "Recipient" is defined as "a person entitled to receive recurring payments from the Government." 31 C.F.R. Sec. 210.2(f). When Treasury becomes aware that a bank wrongfully failed to return credit payments after the death of a recipient, it is required to send a written notice to the bank. 31 C.F.R. Sec. 210.10(a). The notice "shall include the name of the recipient and any beneficiary, the depositor account number, type of account, type of recurring payment, the date of death ..., and a list of credit payments ... which have not been returned ...." 31 C.F.R. Sec. 210.10(a). The next sentence of the regulation, quoted in part above, provides: "[o]n receipt of this notice, the financial organization shall immediately return to the Treasury Department the amount remaining in the account up to the total amount of credit payments listed in the notice." Id.
 
 
 30
 The regulation directs the bank to withdraw the funds only from the account listed in the notice. That account is one belonging to the recipient or in which the recipient has an interest. No regulation or instruction directs banks to withdraw funds from the account of anyone other than the intended recipient. Here, the account belonged to Mahala and her son, neither of whom were entitled to the recurring payments and therefore were not the "recipients" of the payments. Accordingly, Mahala can not claim that Treasury authorized or directed the bank to withdraw the funds. Treasury determined that Walker Bank was accountable to it for the funds, but that was the extent of federal involvement. The bank, without authorization from Treasury, debited Mahala's account. Walker Bank's action may not "fairly be attributed" to Treasury. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 157, 98 S.Ct. 1729, 1734, 56 L.Ed.2d 185 (1978). In the absence of any federal involvement, there was no violation of Mahala's Fifth Amendment right to due process. Id. See also Powderly, supra, 704 F.2d at 1099 (Fletcher, J., concurring).
 
 IV.
 
 31
 Mahala's final argument is that the actions of SSA and Treasury violate the nonalienation provision of the Social Security Act:
 
 
 32
 The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
 
 
 33
 42 U.S.C. Sec. 407. Whatever the merit of this argument with respect to the actions of the bank, the above discussion establishes that Treasury and SSA took no action to recover the funds from Mahala, nor did they authorize the bank's set-off against her account. In this case, Treasury and SSA simply have not taken any action in violation of section 407.
 
 
 34
 We hold that there was no "plainly defined and preemptory duty on the part of" SSA and Treasury to provide notice and a hearing to Mahala. Hadley Memorial Hospital, Inc. v. Schweiker, 689 F.2d 905, 912 (10th Cir.1982). Accordingly, the trial court properly refused to issue a mandamus order. Id.
 
 
 35
 The judgment of the district court is affirmed.
 
 
 
 [1]
 Direct deposit of social security benefits occurs by either a check being sent to the bank, which then credits the beneficiary's account, or a credit payment being made to the bank, which then credits the beneficiary's account (electronic fund transfer). The payments here in question were deposited by both methods
 
 
 [2]
 As originally certified, the class was much broader. The district court limited the class in its memorandum decision and order denying Mahala's motion to alter judgment