Ruth Ann **ALLEN**, Administratrix, of the Estate of Susan Marie Allen, deceased, Plaintiff,

v.

Jack **COOK** and Duane Mathes, Defendants.

No. CIV 86–2505 P.

United States District Court, W.D. Oklahoma.

Aug. 17, 1987.

Gary L. Brooks and Associates, D. Hays Foster, Oklahoma City, Okl., for plaintiff.

Bill Roberson, Lincoln County Dist. Atty., William D. Simpson, Asst. Dist. Atty., Chandler, Okl., for defendants.

## ORDER

PHILLIPS, District Judge.

Before this Court for consideration is a Motion for Summary Judgment filed by defendants Jack Cook and Duane Mathes on May 19, 1987. Counsel for the parties argued the Motion before this Court on July 20, 1987. Defendants contend there is no substantial controversy as to any material fact and therefore the case is ripe for summary adjudication. Plaintiff has responded in opposition.

Summary Judgment is appropriate where there exists no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). The movant bears this burden, *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and must show entitlement to summary judgment beyond a doubt. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027, 1037 (10th Cir.1978). The opposing party must come forward to show the existence of a factual issue, unless the depositions and affidavits of the movant, standing alone would not be enough for a directed verdict. *Stevens v. Barnard*, 512 F.2d 876, 878 (10th Cir.1975). In considering a motion for summary judgment, the materials presented by the parties must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

This case arises out of a car accident involving a police chase. The plaintiff, as administratrix of her daughter's estate, seeks to recover damages under 42 U.S.C. § 1983 from two individuals who were the Sheriff and Deputy Sheriff of Lincoln County, Oklahoma, when the accident occurred. Plaintiff's daughter, Susan Allen, was the occupant of a vehicle which led a Stroud police officer on a high-speed chase after the officer attempted to stop the vehicle for drag racing. Ultimately, the vehicle ran a roadblock set up by the Drumright police, missed a curve, and struck a trailer. Plaintiff's daughter sustained serious injuries and died some four (4) years later. None of the other officers or departments involved are parties in this action.

In her complaint, plaintiff alleges defendant Cook failed to adopt adequate policies governing the operation of the Lincoln County Sheriff's Office and failed to train and supervise his deputies with regard to high-speed pursuits. Plaintiff contends this lack of policy amounts to deliberate indifference and gross negligence which deprived Susan Allen of her constitutional rights. Plaintiff further contends Deputy Sheriff Mathes, acting within his authority, unreasonably and dangerously engaged in a high-speed auto chase. Plaintiff alleges Mathes' actions were so irresponsible and grossly negligent to support a cause of action under 28 U.S.C. § 1983.

Defendants maintain the Due Process Clause of the 14th Amendment was not violated by defendant Mathes, and that plaintiff has failed to state a cause of action against defendant Cook as he had no direct involvement in the pursuit. Defendants argue the plaintiff's claim does not survive the death of her daughter and is barred by the statute of limitations.

At the outset, it should be noted that the parties have not provided the Court with a clear picture as to whether these defendants are sued in their individual or official capacities. The distinction is critical. Individual capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. *See e.g., Scheuer v. Rhodes*, 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974). Official capacity suits, on the other hand, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). On the merits, to establish personal liability under Section 1983, one must

show the official, acting under color of state law, caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). However, in an official capacity action, the entity will only be liable if it is a moving force behind the deprivation. *See Id.* (and cases cited therein).

Plaintiff's complaint does not specify whether the defendants are sued in their individual or official capacities. Therefore the Court has relied on "the course of the proceedings" in hopes the nature of the action would indicate the liability sought to be imposed. *See Id.* at 167, n. 14, 105 S.Ct. at 3106 n. 14. Unfortunately, this has only added to the confusion. Plaintiff's Motion in Limine, for example, asks the Court to prohibit defendants from "making any statements relative to a county or state agency paying any judgment rendered, or that such judgment will be paid from tax money." *See* Plaintiff's Motion in Limine, p. 2, July 1, 1987. Her brief in opposition to defendants' Motion for Summary Judgment contains a rather extensive discussion of the standards for imposing municipal liability, further implying an official capacity action. *See* Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, p. 9–15, June 25, 1987. Defendants, on the other hand, emphasized they are personally on trial. See defendant's Response to Plaintiff's Motion in Limine, p. 2, July 23, 1987. At the July 7 motion docket, defendants' counsel represented this is an individual capacity suit. Plaintiff's counsel did not inform the Court otherwise.

Giving plaintiff the benefit of the doubt, the Court will proceed to decide the motion under both theories for defendant Cook. Plaintiff's counsel having conceded at oral argument that defendant Mathes was in no way responsible for establishing final policy respecting the Lincoln County Sheriff's Department, the Court will assume he is sued in his individual capacity only. *See Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (municipal liability attaches only where the official sued is responsible for establishing final government policy with respect to subject matter in question).

■ Plaintiff brings this action pursuant to the Civil Rights Act of 1871 and the 4th, 5th, 6th and 14th amendments to the Constitution of the United States. The Civil Rights Act does not, standing alone, create any civil rights of citizens; rather, it provides a remedy for rights guaranteed by the Constitution or laws of the United States. *Wise v. Bravo*, 666 F.2d 1328 (10th Cir.1981). Plaintiff seeks to establish these rights by virtue of the aforementioned amendments. However, she has done no more than state defendants acted in violation of the 4th, 5th, 6th amendments and has made no showing the alleged violations meet the applicable case law standards. *See Brice v. Day*, 604 F.2d 664 (10th Cir. 1979). *cert. denied*, 444 U.S. 1086, 100 S.Ct. 1045, 62 L.Ed.2d 772 (1980). To state a cause of action for deprivation of rights by virtue of the Fifth Amendment, for example, one must allege the federal government was somehow involved. *Dockstader v. Miller*, 719 F.2d 327, 332 (10th Cir.1983), *cert. denied*, 467 U.S. 1256, 104 S.Ct. 3546, 82 L.Ed.2d 849 (1984). There is no indication of any federal involvement here.

■ Furthermore, the Court fails to see the applicability of the 4th and 6th amendments to the present action. While a violation of a Fourth Amendment right can give rise to a private cause of action under 42 U.S.C. 1983, *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), courts have questioned the viability of asserting the Fourth Amendment as a predicate for recovery in automobile collision situations. *See, e.g., Dow Chemical v. United States of America*, 106 S.Ct. 1819, 1824–27, 90 L.Ed.2d 226 (1986). *Apodaca v. Rio Arriba County Sheriff's Department*, 647 F.Supp. 752 (D.N.M.1986); *But See Jamieson v. Shaw*, 772 F.2d 1205 (5th Cir.1985). Here, plaintiff has not articulated any unreasonable search or seizure

implicating the Fourth Amendment or brought forth any evidence to support her allegation. Defendants, on the other hand, point to several Oklahoma statutes which indicate it is appropriate under Oklahoma law for the officers to proceed as they did. *See* Defendants' Motion for Summary Judgment, p. 15, May 19, 1987. In the absence of any evidence before the Court relevant to these theories of plaintiff's case, the Court finds there are no triable issues of fact presented as to the 4th, 5th and 6th amendments. It therefore only addresses the alleged 14th Amendment violations, presumably a claim for deprivation of life without due process of law.

### 1. *Deputy Sheriff Mathes*

■ Plaintiff's cause of action against Deputy Sheriff Mathes stems from his involvement in the automobile chase of April 12. Specifically, plaintiff alleges Mathes relayed erroneous information to the dispatcher, encouraged the Stroud police officer giving chase to continue pursuit, tried to intercept the fleeing vehicle and called for a roadblock by Drumright police officers. Plaintiff argues this activity was so irresponsible and so grossly negligent that it is tantamount to a willful disregard of Susan Allen's civil rights.

To establish individual liability under § 1983, plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981); *Norton v. Liddel*, 620 F.2d 1375, 1378–79 (10th Cir. 1980). Clearly, there is no dispute here that Mathes was acting in his capacity as Deputy Sheriff of Lincoln County when he assisted other officers on the night in question. The issue, therefore, is whether Mathes' conduct deprived Susan Allen of life without due process.

Although the right to life is an interest of constitutional dimension, not every deprivation amounts to a constitutional violation giving rise to a § 1983 claim. *Dollar v. Aralson County, Georgia*, 704 F.2d 1540, 1543 (11th Cir.1983), *cert. denied*, 464 U.S. 963, 104 S.Ct. 399, 78 L.Ed.2d 341 (1983). Historically, a guarantee of due process has applied to *deliberate* decisions of government officials to deprive a person of life, liberty or property. *See Daniels v. Williams*, 474 U.S. 327, 332–33, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986) (and cases cited therein). Section 1983 was enacted because prejudice, intolerance or other undesirable factors kept the states from enforcing 14th Amendment rights. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) Clearly, it was not intended to extend federal jurisdiction to every tort committed by any state official.

To guard against making the 14th Amendment "a font of tort law to be superimposed upon whatever systems may already be administered by the states," *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–61, 47 L.Ed.2d 405 (1976), the United States Supreme Court has held the Due Process Clause is not implicated by a state official's *negligent* act causing unintended loss of, or injury to, life, liberty, or property. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). In *Daniels v. Williams*, the Court rejected the notion that a Sheriff's Deputy could violate an inmate's "liberty" interest without due process of law by negligently leaving a pillow on the stairway which caused the inmate serious injury. The Court noted that the Due Process clause was "intended to secure the individual from the arbitrary exercise of the powers of government ... by requiring the government to follow appropriate procedures when its agents decide to 'deprive any person of life, liberty or property'." Finding the deputy's actions quite remote from these concerns and finding no abuse of power, the Court held that due process protections were not triggered by a

lack of due care. *Id.* *See also Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

The *Daniels* and *Davidson* opinions, as well as the earlier Supreme Court decisions of *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) and *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), lend support to lower court findings that negligent acts committed by peace officers in the course of their duties give rise only to state law tort claims. *See e.g., Major v. Benton,* 647 F.2d 110 (10th Cir.1981) (involving negligence by prison officials in failing to formulate safety measures). Most analogous to the case at bar are those cases arising out of automobile accidents involving police officers. In the "worst case" scenario, an officer speeding to answer a call has negligently failed to turn on his siren and flashing lights and has struck and killed a law-abiding motorist. *See e.g., Cannon v. Taylor,* 782 F.2d 947 (11th Cir.1986) *Apodaca v. Rio Arriba County Sheriff's Department,* 647 F.Supp. 752 (D.N.M.1986). Others involve a pedestrian struck and killed by a police officer responding to a call. *See, e.g., Walton v. Salter,* 547 F.2d 824 (5th Cir.1976). There is at least one instance of officers in an unmarked vehicle chasing a motorcyclist who suffers injury allegedly caused by the officers' actions. *See Boren v. City of Colorado Springs,* 624 F.Supp. 474 (D.Colo.1985). The common thread running through these cases is the allegation of negligent conduct, and the Courts' finding that such negligence, even if proven, does not suffice to trigger federal jurisdiction for civil rights violations.

The present case is even further removed from Section 1983 liability than the noncognizable automobile accident cases cited above. Defendant Mathes was never directly involved in the chase between the Stroud police officer and the vehicle in which plaintiff's daughter was a passenger.

Mathes' only alleged participation was by way of radio. While such actions may be actionable in state court, the Court finds they do not rise to the level of a Constitutional deprivation.[1] Therefore, defendant Mathes' Motion for Summary Judgment is hereby GRANTED.

*2. Sheriff Cook and Lincoln County*

Although plaintiff has failed to show defendant Mathes deprived her daughter of a Constitutional right, defendant Cook and/or Lincoln County might still be liable if an improper policy had been adopted. *See Wellington v. Davis,* 717 F.2d 932, n. 6 (4th Cir.1983); *But see Boren v. City of Colorado Springs,* 624 F.Supp. 474, 479 (D.Colo.1985). Lincoln County (for the purposes of this discussion referred to as a municipality) will only be responsible for Cook's actions if he possesses authority for establishing final county policy with respect to the activity in question. *Pembaur v. Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). Cook's individual liability generally turns on the same requirements as municipal liability, but the deprivation need not be due to policy or custom. *See McClelland v. Facteau,* 610 F.2d 693 (10th Cir.1979).

The Complaint in this action does not assert the Sheriff is responsible for establishing county policy respecting pursuits by deputy sheriffs and the record is virtually devoid of evidence indicating he has such authority. Assuming for the purposes of this motion a sheriff could do so under appropriate circumstances, the Court proceeds as if Sheriff Cook's decisions in this area would represent county policy which could give rise to municipal liability. *See Opinion Oklahoma Attorney General No. 79–98 (1979); Pembaur v. Cincinnati,* 475 U.S. 469, 483 n. 12, 106 S.Ct. 1292, 1300 n. 12, 89 L.Ed.2d 452 (1986).

▇ Plaintiff seeks to impose liability in this case by asserting defendant Cook

---

1. Presumably, in an effort to circumvent the exclusion of claims based on negligence, plaintiff has used terms in her pleadings which encompass more than negligence; however, these conclusory allegations amount to nothing more than the "artful pleading" of which the Supreme Court has expressed concern, and are not supported by any facts or evidence before the Court.

failed to adequately adopt policies governing operation of the sheriff's office and failed to supervise and train his officers concerning high-speed pursuits. While a "policy of omission" theory has sometimes been argued successfully, it is clearly not susceptible to easy proof. *See Wellington v. Daniels,* 717 F.2d 932, 936 (4th Cir.1983) (and cases cited therein); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). This is so because "policy" generally implies a course of action consciously chosen from among various alternatives by the official responsible for adopting final policy. *Tuttle,* 471 U.S. at 823, 105 S.Ct. at 2436. If policy cannot be articulated but is alleged to be reflected in a "but for" sense, it is doubtful the plaintiff can state a cause of action under § 1983. *See Pembaur v. Cincinnati,* 475 U.S. 469, 482 n. 11, 106 S.Ct. 1292, 1299 n. 11, 89 L.Ed.2d 452 (1986) (discussing the plurality and concurring opinions.) In this case, as plaintiff's counsel acknowledged at oral argument, the high-speed chase "policy" of Lincoln County is not a course of action consciously chosen from various alternatives. Rather, plaintiff has simply alleged that the accident in question would not have occurred "but for" the absence of a high-speed chase policy.

Moreover, showing that an individual unauthorized to make policy violated a person's rights on an isolated occasion is not sufficient to raise an issue of fact whether adequate training and procedure were provided. *McClelland v. Facteau,* 610 F.2d 693, 697 (10th Cir.1979). Likewise, a pattern of police misconduct is necessary to impose § 1983 liability for failure to supervise. *See Avery v. Burke County,* 660 F.2d 111 (4th Cir.1981). There must be some evidence of prior similar instances where citizens were injured or endangered by policy behavior to impute knowledge to supervisory personnel of municipality inadequacies. *See Languirand v. Hayden,* 717 F.2d 220, 227–28 (5th Cir.1983). *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984). Only then could the municipality's omissions constitute "tacit authorization of" or "deliberate indifference" to Constitutional injuries. *Avery,* 660 F.2d at 114.

Where a Constitutional violation is not alleged to be part of a pattern of past misconduct, a supervisory official or municipality may be held liable only where there is essentially a complete failure to train the police force, or where training is so reckless or grossly negligent that future misconduct is almost inevitable. *Hays v. Jefferson County, Kentucky,* 668 F.2d 869, 874 (6th Cir.1982) *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982). In fact, it is not entirely clear that gross negligence in training meets the test, for as Justice Rehnquist, writing for the plurality in *Oklahoma City v. Tuttle,* stated:

> We express no opinion on whether a policy that itself is not unconstitutional, such as the general 'inadequate training' alleged here, can ever meet the 'policy' requirement of *Monell.* In addition, even assuming that such a 'policy' would suffice, it is open to question whether a policymaker's 'gross negligence' in establishing police training practices could establish a 'policy' that constitutes a 'moving force' behind subsequent unconstitutional conduct, or whether a more conscious decision on the part of the policymaker would be required. 471 U.S. 808, 824 n. 7 [105 S.Ct. 2427, 2436 n. 7, 85 L.Ed.2d 791] (1985).

*See also Grandstaff v. City of Borger, Texas,* 767 F.2d 161 (5th Cir.1985) *cert. denied,* — U.S. —, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987) (it is doubtful that a finding of gross negligence in training will always be a ticket to municipal liability). Courts do agree, however, that there must be more than negligence and the burden is on the plaintiff to so prove.

In the present action, there is no allegation the alleged constitutional violation is but one example of a series of abuses. Rather plaintiff's counsel conceded at the July 7 hearing on all pending motions that plaintiff has no evidence of high-speed pursuits by Lincoln County officers in the recent past or any knowledge of injury due to

such pursuits. Counsel indicated the only evidence pertaining to the Lincoln County Sheriff's Department focused on the night of the accident. In fact, plaintiff's total submission supporting her claim against defendant Cook consists of an affidavit by an Associate Professor of Criminology who opines that his failure to promulgate policies to adequately supervise and train his deputies regarding high-speed pursuit was a grossly negligent act. There is nothing to indicate the grounds relied on by plaintiff's expert in making such a statement, nor is there any factual support in the record. *See Merit Motors, Inc. v. Chrysler Corporation,* 569 F.2d 666 (D.C.Cir.1977).

The policies underlying Rule 56 do not require that a Court deny summary judgment whenever a party produces an expert to support her position. *Id.* In this case, defendants have presented evidence that each member of the Lincoln County Sheriffs Office has received standard police academy training which includes high-speed pursuit. Plaintiff has failed to raise an issue as to whether this training is grossly inadequate, if indeed such a showing would allow recovery. Admittedly, plaintiff cannot show a conscious choice to pursue an inadequate policy, but relies on the "but for" theory which this Court has rejected in the past. *See Hintergardt v. City of Oklahoma,* CIV 85–2266–W (Nov. 26th, 1985) [Available on WESTLAW, DCT database] (plaintiff failed to allege what special duty defendant had to train its officers with regard to high-speed chases). Thus, summary judgment for Sheriff Cook in his official capacity is GRANTED.

Finally, to recover from defendant Cook individually, plaintiff must show that he breached a duty to plaintiff which was the proximate cause of the injury. *See McClelland v. Facteau,* 610 F.2d 693 (10th Cir.1979). In essence there must be an "affirmative link" between the misconduct complained of and the actions of the defendant. *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). This requires that the superior either participate or acquiesce in a constitutional deprivation, or fail to perform a required duty. *Kite v.*

*Kelly,* 546 F.2d 334, 337–38 (10th Cir.1976); *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978). If the defendant is in a position of responsibility, knew, or should have known, of the misconduct, and yet failed to prevent future harm, a cause of action for breach of duty would be stated.

The uncontroverted facts show that defendant Cook did not participate in any way in the pursuit involving plaintiff's daughter, nor did he acquiesce in defendant Mathes' conduct as discussed previously. There had been no more than one pursuit involving the sheriff's office in the past three years and no instances of injury. Under these facts, viewed in the light most favorable to the plaintiff, the Court has no trouble finding a lack of causation between defendant Cook's actions and the alleged constitutional violations. Therefore, summary judgment for defendant Cook individually is appropriate.

In summary, having found dispositively that Section 1983 is not implicated in this case, the Court declines to rule on the statute of limitations question.

IT IS SO ORDERED.